# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

WERNER ENTERPRISES, INC.,

    Plaintiff,

v.

DAVID WIRE, PHILLIP
MITCHELL and AJC LOGISTICS,
LLC,

    Defendants.

Civil Action No.: 1:21-cv-02667-VMC

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

If the Court were to experience a sense of déjà vu upon reading the arguments contained in Defendants' Motion to Dismiss, it would be very well founded. The same contentions previously appeared during Defendants' unsuccessful attempt to prevent Plaintiff from amending the First Amended Complaint. Indeed, Defendants' current Motion is little more than a rehash of Defendants' prior assertion that the proposed amendments to the First Amended Complaint would be futile. The Court, however, expressly found that the amendments would not be futile the first time it

considered the question and necessarily decided that the Second Amended Complaint stated claims upon which relief can be granted.[1]

Moreover, the Court held that it "agree[d] with Werner that the additional factual allegations added in its Second Amended Complaint serve to support its trade secret misappropriation claim, and the separation of 'Confidential Information' and 'Trade Secrets' provides clarity to its claims and addresses Defendants' preemption arguments." (Dkt. 61 at 5). Plaintiff respectfully submits that the Court should reject the Defendants' request for a "do-over" and deny their latest Motion.

## I.     FACTUAL BACKGROUND

As described at length in the pleadings and prior Motions, Plaintiff Werner Enterprises, Inc. ("Werner"), is a transportation and logistics company and Defendant AJC, Inc. ("AJC") is a direct competitor to Werner. Defendant Phillip Mitchell ("Mitchell") and Defendant David Wire ("Wire") are former employees of Werner who now work for AJC. This case results from "Project Orbit," a conspiracy between AJC, Mitchell, and Wire to wrongfully compete with Werner while Wire and Mitchell were still employed by Werner. (*See* Sec. Am. Compl.) (Dkt. 62).

---

[1] As the Court acknowledged, denial of leave to amend on the basis of futility is only justified "when the complaint as amended is still subject to dismissal."(DKt. 61 at 5, *citing Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004)).

Defendants accomplished their conspiracy through, among other things, the wrongful use and disclosure of Werner's confidential information and trade secrets. (Sec. Am. Compl. at 6-10) (Dkt. 62). Project Orbit ultimately resulted in massive disruption and financial loss for Werner's Atlanta office. (Sec. Am. Compl. at 12) (Dkt. 62).

On August 6, 2021, Werner filed its First Amended Complaint, alleging violations of the Defend Trade Secrets Act ("DTSA"), the Georgia Trade Secrets Act ("GTSA"), tortious interference with business relations, civil conspiracy, and conversion against all Defendants (the "Amended Complaint"). (Dkt. 14). Werner also brought claims of breach of contract and breach of duty of loyalty against Wire and Mitchell, and tortious interference with contract against AJC. (Am. Compl. at 10-15, 27-28). Defendants filed their Answer on August 18, 2021. (Dkt. 15).

The parties then engaged in the exchange of documents and written discovery, which included several discovery disputes and required numerous conferrals and delays, two of which led to appearances before the Court. Over six months after the Amended Complaint was filed Defendants sought leave to file their Motion for Judgment on the Pleadings. (Dkt. 31). A stay of discovery was entered on March 25, 2022, pending the resolution of the Motion for Judgment on the Pleadings and

the resolution of previously submitted discovery disputes. (Dkt. 42).[2] Defendants were granted leave to file their Motion for Judgment on the Pleadings and did so on April 15, 2022. (Dkt. 46, 48). After extensive briefing, the Court granted Werner leave to file its Second Amended Complaint and denied Defendants' Motion for Judgment on the Pleadings without prejudice as moot on October 28, 2022. (Dkt. 61).

In compliance with the Court's Order, Werner filed its Second Amended Complaint on November 1, 2022. (Dkt. 62). Despite the Court's endorsement, Defendants filed yet another motion, this time asking the Court to dismiss the Complaint whose filing it had just approved. This latest Motion consists largely of the same arguments contained in Defendants' Motion for Judgment on the Pleadings and which Defendants had incorporated into their Opposition to Werner's Motion to Amend.

## II.    STANDARD OF REVIEW

A complaint need not contain "detailed factual allegations to survive dismissal," but must provide the grounds of entitlement to relief with "more than

---

[2] These discovery disputes remain unresolved, and have delayed important documentary discovery and depositions. Dismissing Werner's claims at this time, when it has been prevented from completing discovery by Defendants' refusal to produce certain documents or conduct relevant searches of their records, would unfairly deprive Werner of the opportunity to prove its claims.

labels and conclusions . . . ." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

In the case of a motion to dismiss involving the misappropriation of confidential information, a party does not have to fully divulge the details of its confidential and proprietary information to survive. *See DynCorp Int'l v. AAR Airlift Grp., Inc.* 664 F. App'x 844, 849 (11th Cir. 2016). The allegations must allow the defendant to have notice of the basis of the plaintiff's claims. *Id.* at 850. The Second Amended Complaint, as pleaded, sufficiently identifies the confidential information and trade secret information Werner alleges were misappropriated by Defendants and Defendants have more than adequate notice of Werner's claims.

## III.   ARGUMENT

Defendants contend that Werner's claims for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, ("DTSA"), the Georgia Trade Secrets Act, O.C.G.A. § 10–1–760 et seq., ("GTSA"), and its state law claim for breach of contract fail to

identify the misappropriated trade secrets and confidential information at issue. The Second Amended Complaint contains more than enough detail to provide Defendants with notice of the basis of Werner's claims without divulging the details of its confidential and proprietary information.

Defendants next argue that the contracts underlying Werner's breach of contract claim are unenforceable under Nebraska law but fatally fail to identify any controlling law in support of their position. Relevant authority instead instructs that the underlying contracts are enforceable.

Additionally, Defendants argue that Werner's tort law claims are preempted by the GTSA because they are based on the misappropriation of trade secret information. The Second Amended Complaint alleges misconduct other than the misappropriation of trade secrets to support its tort law claims, and they are therefore not preempted. Because Werner's tort claims are not preempted, Defendants argument that Werner's conspiracy claim should be dismissed for lack of a viable underlying tort claim also fails.

Finally, Defendants argue that Werner's claims for tortious interference with business relationships fail to satisfy the stranger doctrine. Because the authority cited by Defendants is factually distinguishable from the present case, this argument also fails.

## A. Werner Has Sufficiently Pleaded Its Trade Secrets Claims.

A claim for misappropriation of trade secrets requires a plaintiff to prove that "(1) it had a trade secret and (2) the opposing party misappropriated the trade secret." *Cap. Asset Rsch. Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998) (internal quotation marks omitted). Defendants incorrectly argue that Werner's claim of misappropriation fails to specifically identify the trade secrets Defendants allegedly misappropriated. (Defs.' Mem. at 9). The analysis of claims under the DTSA and the GTSA substantially overlap, and courts therefore address them simultaneously. *See, e.g., U.S. Sec. Assocs., Inc. v. Lumby*, No. 1:18-CV-5331-TWT, 2019 WL 8277263 (N.D. Ga. Sept. 25, 2019); *see also One Sixty Over Ninety, LLC v. Ologie, LLC*, No. 3:17-CV-147 (CDL), 2019 WL 11608032, at *3–4 (M.D. Ga. Sept. 6, 2019). "Compilations" and "list[s] of actual or potential customers" explicitly qualify as trade secrets under the GTSA. O.C.G.A. § 10-1-761(4); *see also G.W. Henssler & Assocs., Ltd. v. Marietta Wealth Mgmt., LLC*, No. 1:17-CV-2188-TCB, 2017 WL 6996372, at *4 (N.D. Ga. Oct. 23, 2017); *U.S. Sec. Assocs., Inc.*, 2019 WL 8277263, at *10. The DTSA's and GTSA's definitions of "trade secret" are purposefully broad, and the Amended Complaint specifies several types of

information that are explicitly included within them. The definition of "Trade Secrets"[3] in the Second Amended Complaint reads in full:

> customer lists containing customer identities and information regarding preferences, needs, background, contact persons, contact information, requirements, purchasing tendencies, sensitive pricing, mark-up, and margin information regarding rates charged to customers for particular Werner products and services, and history of customers (including both retailers and wholesalers/distributors); and proprietary financial documents including, but not limited to, market profiles, profit and loss analyses and revenue summaries and projections for individual customers as well as entire Werner offices.

(Sec. Am. Compl. ¶ 13). The trade secret information identified in the Amended Complaint specifically includes "customer lists," with a description of information that is included in those compilations, as well as "proprietary financial documents."

The Northern District of Georgia has declined to dismiss claims under the DTSA and GTSA that were pleaded in a manner similar to those of Werner's. For example, in a case cited by Defendants, this Court denied a motion to dismiss where the complaint contained a very similar definition of the phrase "trade secrets." *See Agilysys, Inc. v. Hall.*, 258 F. Supp. 3d 1331 (N.D.Ga. 2017). The *Agilysys* complaint defined "trade secrets" as: "including but not limited to, price lists, sales lead sheets,

---

[3] Defendants inaccurately claim that Plaintiff's definition of "Trade Secrets" is "a reiteration of the exact language found in the Proprietary Matters Agreements." (Defs.' Mem. at 11). To the contrary, the Contract encompasses a broader list of information, both trade secrets and non-trade secrets.

customer lists, bidding proposal methodology, past purchase information, and proposal templates" and contained accusations that the defendant emailed "trade secret, confidential, and/or proprietary information from his [Werner] email account to his personal email account." Am. Compl. at 8, *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331 (N.D.Ga. 2017) (No. 1:16 03557).

Additionally, in *U.S. Sec. Assocs., Inc. v. Lumby*, this Court determined that a plaintiff properly pleaded violations of the DTSA and GTSA where the complaint alleged the defendant had "accessed, viewed, and downloaded [plaintiff]'s client contact information for the purpose of utilizing this information and gaining an unfair competitive advantage in his new role" and "has used and intends to continue to use [plaintiff]'s confidential information in soliciting customers and in order to immediately and wrongfully divert customers and business away from [plaintiff[ and to [defendant]." First Am. Compl. at 11, 2019 WL 8277263 (N.D. Ga. Sept. 25, 2019) (No. 1:18-CV-5331-TWT).

Similarly, here, the Second Amended Complaint alleges that "customer lists containing customer identities and information" including "sensitive pricing, mark-up, and margin information regarding rates charged to customers for particular Werner products and services" was misappropriated "through various means including, but not limited to, personal Google Drive cloud storage accounts." (Sec.

Am. Compl. ¶¶ 13, 43). Werner's identification of trade secrets alleged to have been misappropriated by Defendants more than sufficiently places Defendants on notice of the claims against them.

Defendants' reliance on *M5 Management. Services, Inc. v. Yanac*, is misplaced. In *M5 Management,* the Northern District of Alabama dismissed the plaintiff's DTSA claim because the complaint failed to "adequately allege what its trade secrets were or how the Defendant misappropriated them." 428 F. Supp. 3d 1282, 1290 (2019). The complaint in *M5 Management Services, Inc.*, however, included "trade secrets" within its definition of "Confidential Information." That definition read in full: "sensitive and valuable business information, trade secrets, pricing information, prospect lists, candidate lists and information, qualification requirements, good will, and other such confidential material, contacts, sources, and data." First Am. Compl. at 3-4, *M5 Mgmt. Servs., Inc. v. Yanac*, 428 F. Supp. 3d 1282 (N.D.Ala. 2018) (5:18-CV-00209). There, the term "trade secrets" is not defined anywhere in the complaint, nor does the complaint provide any facts to support the contention that confidential or proprietary information of any kind was misappropriated. Instead, the *M5 Management* plaintiff only used the term "trade secret . . . once when describing its confidential material but [did] not provide any supporting information in the complaint as to what the trade secrets [were]." *Id*. at

1290.[4] This isolated reference to "trade secret" is far less specific than the extensive

definition supplied in Werner's Second Amended Complaint.

Defendants' reliance on *Putters v. Rmax Operating, LLC* is similarly

misguided. No. 1:13-CV-3382-TWT, 2014 WL 1466902 (N.D. Ga. Apr. 15, 2014).

First, this court subsequently disagreed with, and declined to follow, the ruling in

*Putters* noting that the basis for the court's opinion was unclear:

> To the extent that the court in *Putters* intended to hold that prior
> exposure to trade secrets through proper means (i.e., within the
> employment relationship) creates a right of a former employee to later
> re-acquire the same information without permission or approval, this
> court disagrees.

*Chemence Med. Prod., Inc. v. Quinn*, No. 1:11-CV-1366-CAP, 2015 WL 12532179,

at *6 (N.D. Ga. Aug. 5, 2015), *aff'd*, 685 F. App'x 701 (11th Cir. 2017). The *Putters*

opinion is also distinct because that defendant was held not to have acquired the

alleged trade secrets by "improper means" where he was not bound by a

confidentiality agreement and acquired the trade secrets properly during his

employment. *Putters v. Rmax Operating, LLC*, No. 1:13-CV-3382-TWT, 2014 WL

1466902, at *3 (N.D. Ga. Apr. 15, 2014). In contrast, Wire and Mitchell were bound

---

[4] Defendants also cite to *M.C. Dean, Inc. v. City of Miami Beach, Fla.,* 199 F. Supp.
3d 1349, 1357 (S.D. Fla. 2016). That opinion addressed the failure of a plaintiff to
allege that it took steps to protect the secrecy of its alleged trade secrets or that those
trade secrets were wrongfully acquired. Those facts are not at issue here.

by confidentiality agreements, making the Defendants' conduct wrongful. (Sec. Am. Compl. ¶¶ 33, 35). For these reasons, the Court should disregard the *Putters* decision as an unpersuasive and inapplicable outlier.

## B. Werner has Sufficiently Pleaded Breach of Contract.

By recycling its DTSA and GTSA arguments and without citing to any controlling law, Defendants seek to dismiss Werner's breach of contract claims by arguing that the underlying Proprietary Matters Agreements (the "Contracts") are unenforceable under Nebraska law. To the contrary, complaints alleging breach of contract based on similar descriptions of confidential information have survived motions to dismiss under Nebraska law.

1) The Amended Complaint sufficiently alleges that Wire and Mitchell were subject to confidentiality agreements and sufficiently identifies the confidential information alleged to have been taken.

Defendants again rely on *M5 Management Services, Inc.* for the contention that Werner failed to identify the confidential information allegedly misappropriated in breach of the Contracts or the ways in which Defendants misappropriated that information. In *M5 Management*, however, the plaintiff described a broader list of confidential information and alleged no facts to support its claims of misappropriation. The plaintiff instead relied on "the complaint read in its entirety" to support its claim. *M5 Mgmt. Servs., Inc.*, 428 F. Supp. 3d at 1289. Here, Werner

alleged misappropriation of confidential information, including: "marketing strategies and operational plans; Werner employees' personally identifiable information including, but not limited to, salary and commission structures and performance evaluations; non-trade secret information concerning Werner's new business ventures and potential market affiliations; customer leads; and other customer-specific information." (Sec. Am. Compl. ¶ 12). These categories of information constitute proprietary customer information under the Proprietary Matters Agreement, which specifically protects "information about customers and prospective customers." (Ex. A, B to Sec. Am. Compl. at 1). Further, Werner specifically alleges that Wire and Mitchell "wrongfully reproduced, transferred and distributed Werner's Confidential Information and Trade Secrets through various means including, but not limited to, personal Google Drive cloud storage accounts." (Sec. Am. Compl. ¶ 43).

The Northern District of Nebraska's ruling in *Signature Style, Inc. v. Roseland* is instructive and persuasive. There, the federal district court sitting within Nebraska and applying Nebraska law held that the plaintiff stated a claim for breach of a confidentiality agreement signed by the defendant where the complaint alleged that the defendant, in violation of a contract, had misappropriated a broad range of materials. *Signature Style, Inc. v. Roseland*, No. 4:19-CV-3089, 2020 WL 58456, at

\*6 (D. Neb. Jan. 6, 2020). Specifically, that complaint accused the defendant of misappropriating "certain proprietary and confidential information, documentation and materials, including, but not limited to, customer lists, trade secrets, supplier, vendor and manufacturer proprietary information, customer order processes, ring designs, pricing information and strategies, intellectual property, and other proprietary information…" Compl. at 3, *Signature Style, Inc. v. Roseland,* 2020 WL 58456 (Dist. Nebr., Jan. 6, 2020) (No. 4:19-CV-3089). The misappropriated Confidential Information identified in the Amended Complaint is even more specific than the list of information at issue in *Signature Style.*

The Amended Complaint sufficiently alleges that Wire and Mitchell were subject to confidentiality agreements and sufficiently describes the confidential information alleged to have been misappropriated by Defendants.

2) <u>The Contracts are enforceable because they are supported by consideration and contain a durational limitation.</u>

Defendants erroneously claim that the Contracts are unenforceable because: a) continued employment cannot constitute consideration under Nebraska law, and b) the Contracts do not contain a durational limit.

*a) The Contracts are supported by sufficient consideration.*

Defendants contend that, "[w]hile Nebraska courts have not specifically addressed the question of whether continued employment is sufficient consideration

for a restrictive covenant or confidentiality agreement," Werner has "not alleged any consideration or additional benefit" in exchange for Wire and Mitchell signing the Contracts. (Defs.' Mem. at 18). To the contrary, it is settled Nebraska law that continued employment is sufficient consideration for restrictive covenants. *See Sec. Acceptance Corp. v. Brown*, 106 N.W.2d 456, 463 (1960), *decision clarified on denial of reh'g*, 107 N.W.2d 540 (1961) (enforcing restrictive covenant signed after employment commenced). The U.S. District Court for the District of Nebraska, interpreting Nebraska law, also recently agreed that continued employment is sufficient consideration to support a confidentiality agreement and denied a motion to dismiss on this ground. *Signature Style, Inc. v. Roseland*, No. 4:19-CV-3089, 2020 WL 58456, at *5 (D. Neb. Jan. 6, 2020).

In addition, Georgia has unambiguously concluded that continued employment is sufficient consideration to support a confidentiality agreement like the ones signed by Wire and Mitchell. *See, e.g., Albertson v. Art Inst. of Atlanta*, No. 116CV03922WSDRGV, 2017 WL 9474223, at *7 (N.D. Ga. Mar. 23, 2017), *report and recommendation adopted*, No. 1:16-CV-3922-WSD, 2017 WL 1361293 (N.D. Ga. Apr. 14, 2017). The Contracts are supported by sufficient consideration in accordance with Nebraska law.

### b) The Contracts contain a temporal limitation.

Defendants' argument that the Contracts lack a durational limitation is similarly unfounded. The Contracts provide that the confidentiality obligations will last "for a period after termination of such employment, *until the Confidential Information becomes publicly known*." (Ex. A, B to Sec. Am. Compl. at 1) (emphasis added). Construing Nebraska law, the District of Nebraska enforced a nondisclosure agreement with nearly identical language. *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11CV438, 2012 WL 12985133 (D. Neb. May 25, 2012). The contract at issue in *Election Systems* read:

> I agree that I will not at any time, **either during or after my employment with [plaintiff] until the Confidential Information becomes publicly known**, in any way disclose to anyone or use for any purpose any Confidential Information of [plaintiff], except as specifically required in the proper performance of the duties of [my] employment with [plaintiff] or as expressly authorized by [plaintiff].

*Id.* at *1. (Emphasis added). The Contracts at issue and signed by Wire and Mitchell are nearly identical:

> Employee further agrees that during the term of Employee's employment with Werner Enterprises **and for a period after termination of such employment, until the Confidential Information becomes publicly known**, Employee shall not disclose to anyone or use for any purpose any Confidential Information of Werner Enterprises, . . ..

(Sec. Am. Compl. Ex. A, B) (emphasis added). Moreover, the confidentiality provision at issue in *Signature Style, Inc. v. Roseland* survived a motion to dismiss despite containing **no** temporal limitation and despite that the accompanying noncompete was found unenforceable. 2020 WL 58456, at *1 (D. Neb. 2020); Ex. A to Compl. at 3, *Signature Style, Inc. v. Roseland*, 2020 WL 58456 (D. Neb. Sep. 9, 2019) (No. 4:19-CV-3089).

> ### c) Application of Georgia law supports enforcement of the Contracts.

Defendants cite to *CAE Vanguard, Inc. v. Newman*, a 28-year-old Nebraska case that applies obsolete Georgia law concerning the "blue-pencilling" of an overbroad noncompete agreement in support of its position that the Contracts are unenforceable. (Defs.' Mem. at 19, n. 3) (citing 518 N.W. 2d 652, 655-56 (Neb. 1994)). Not only is the application of Georgia law in *CAE Vanguard* inapposite to the issue before the Court, but the relevant Georgia law discussed in *CAE Vangaurd* was preempted by the Georgia Restrictive Covenant Act of 2011, which now specifically permits courts to modify restrictive covenants "to achieve the original intent of the contracting parties to the extent possible." O.C.G.A. § 13-8-54. Defendants' reliance on the holding in *CAE Vanguard* is therefore inapplicable.

Defendants' reliance on *Carson v. Obor Holding Co.*, LLC is equally inapposite because the confidentiality agreement there explicitly applied "in

perpetuity." 734 S.E.2d 477, 482 (Ga. App. 2012). As addressed above, the contract provision at issue here applies until the information becomes public knowledge and is therefore enforceable under Nebraska law.

### C. Werner's Tort Claims Are Not Preempted by the GTSA Because They Are Not Based Solely on Defendants' Misappropriation of Trade Secrets.

Defendants contend that Werner's claims for breach of duty of loyalty by Wire and Mitchell (for solicitation of customers), tortious interference with business relationship (against Wire), and tortious interference with contract (against AJC) are superseded by the GTSA. (Defs.' Mem. at 19). While the GTSA does supersede conflicting tort law claims based exclusively on the misappropriation of a trade secret, it does not supersede claims based on an underlying breach of a contract that prohibits the disclosure of confidential or trade secret information, nor does it supersede claims that are based on facts other than misappropriation of a trade secret. O.C.G.A. § 10-1-767(a), (b).

### 1. Werner's Amended Complaint Alleges Misappropriation of both Trade Secret Information and Confidential Information.

The Second Amended Complaint alleges that Defendants' conspiracy involved the misappropriation of information that constitutes **both** trade secret information under the DTSA and the GTSA and of additional confidential and proprietary information that was protected by the Contracts and did not constitute

trade secret information. (Sec. Am. Compl. ¶¶ 12, 13). This Court has held that, although the GTSA preempts "lesser and alternate" claims based on the misappropriation of information that is classified as trade secret information, it does not preempt claims which are based on the misappropriation of information that a plaintiff "characterizes as *non*-trade secrets." *Angel Oak Mortg. Sols. LLC v. Mastronardi*, No. 1:20-CV-4583-MLB, 2022 WL 875910, at *3 (N.D. Ga. Mar. 23, 2022); *see also Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007) ("[I]f a claim seeks to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct—such as the . . . improper interference with contractual relationships respecting something other than proprietary information—such a claim cannot be said to be 'in conflict' with the GTSA.").

The cases cited by Defendants are inapposite because those plaintiffs pleaded an "alternative theory of recovery" in the event that a defined set of information did not qualify as trade secret information. *See, e.g.*, *Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378 (N.D. Ga. 2005); *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 465, 722 S.E.2d 55, 58 (2012). Werner does not plead alternate theories of recovery for the misappropriation of its trade secret information, rather, it

contends that Defendants shared information that constituted trade secret information as well as confidential non-trade secret information.

Defendants also cite to *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.* where the court held that the GTSA superseded state law tort claims that were "clearly based upon a trade secret." 318 F.3d 1284, 1287-88 (11th Cir. 2003). There, the plaintiff's tort claims were based exclusively on conduct related to the misappropriation of trade secrets. *Id.* Here, however, the Second Amended Complaint alleges the misappropriation of non-trade secret Confidential Information as the basis for its tort claims.

### 2. The GTSA Does Not Supersede Werner's Tort Claims because they are Based on Facts other than Misappropriation of Trade Secrets.

Tort claims that are not based on the misappropriation of trade secret information are not preempted by the GTSA. *See* O.C.G.A. § 10-1-767(b); *Angel Oak Mortg. Sols. LLC v. Mastronardi*, No. 1:20-CV-4583-MLB, 2022 WL 875910, at *3 (N.D. Ga. Mar. 23, 2022). Defendants concede that Werner's breach of duty of loyalty claims against Wire and Mitchell are not preempted to the extent that they are not based on the misappropriation of trade secrets. (Defs.' Mem. at 5, n. 1).

As for Werner's conspiracy claim, because Werner's tort claims are not superseded by the GTSA, and the Second Amended Complaint alleges that Defendants engaged in a conspiracy by "induc[ing] other employees of Werner to

breach their duty of loyalty," Werner's conspiracy claim should not be dismissed. (Sec. Am. Compl. ¶¶ 163-64). Similarly, Werner's tortious interference with contract claim against AJC is not based on the misappropriation of trade secrets, but on AJC's willful involvement in Werner employees' breach of their Contracts. (Sec. Am. Compl. ¶ 144). Werner's tort claims are therefore not preempted by the GTSA.

### D. Defendants were Strangers to the Business Relations with which they Interfered

Defendants contend that Werner's claim for tortious interference with business relations should be dismissed because Defendants were not strangers to the business relationships with which they interfered. In support of this argument, Defendants cite to the recent holding by the Georgia Court of Appeals in *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205, 216, 874 S.E.2d 394, 403 (2022). However, *Parnell* does not control in this case.

Defendants erroneously claim that the *Parnell* court held that the defendant in that case "had a legitimate financial interest in the customers to [sic] moving their business to the new employer." (Defs.' Mem. at 24). Rather, the Court held that the defendants "were not strangers to the employment agreement or to the underlying business relationship *between [individual defendant] and [former employer]*." *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205, 216, 874 S.E.2d 394, 402

(2022) (Emphasis added). In this case, Werner has asserted tortious interference with business relations claims against all Defendants for interfering with Werner's relationships with its existing customers, and against Wire and Mitchell for interfering with the relationships of other employees on behalf of AJC. There is a stark difference between an employer's interest in its own employee's noncompete and its interest in the business and employees of another business. Were this court to extend the *Parnell* decision to apply to a competitor's interest in another company's business, it would undercut Georgia precedent that holds to the contrary in situations like the one in this case. Prior to the *Parnell* decision, Georgia courts routinely sustained tortious interference with business relations claims against a party's direct competitor when the competitor interfered with the business relations between an employer and its customers. *See, e.g., Tom's Amusement Co. v. Total Vending Servs.,* 533 S.E.2d 413, 417 (2000) ("Holding that "the competitor and its agents who assist in the interference" may be liable for tortious interference with business relations as to a former employer and its customers.).

Defendants' also point to *Tom's Amusement Co.* for the proposition that an employee "is not a stranger to the business relationship between his employer and the customers he personally services." (Defs.' Mem. at 24, *citing* 533 S.E.2d at 417). However, Werner's Second Amended Complaint does not allege that Defendants

Wire and Mitchell "personally serviced" any of the customers whose relationships with Werner were interfered with. Rather, the Second Amended Complaint alleges that Wire and Mitchell served as Werner's Logistics Branch Manager and Regional Shipper Sales Manager, respectively, and abused their access to Confidential Information to tortiously interfere with Werner's business relations on behalf of AJC. (Sec. Am. Compl. at ¶¶ 32, 34). Notably, the *Tom's Amusement Co.* court's discussion of this aspect of the stranger doctrine was had in the context of a motion for summary judgment, not a motion to dismiss. *See* 533 S.E.2d 413. This distinction is crucial because which business relationships were interfered with, and whether or not those relationships were with customers whom Wire and Mitchell "personally serviced" is a question of fact that is inappropriate to resolve at this stage of the litigation and requires more discovery. Therefore, Defendants' Motion should be denied.

## IV.  CONCLUSION

Werner's trade secret claims and breach of contract claims were sufficiently pleaded, and Defendants are on notice of the nature of the claims asserted against them. The Contracts are valid and enforceable, and Werner's tort claims are not preempted, nor is Werner's conspiracy claim based on preempted tort claims. Furthermore, Defendants were strangers to the business relations supporting

Werner's tortious interference claims. Accordingly, the Court should deny Defendants' Motion.

This 12th day of December, 2022.

Respectfully submitted,

_____

Ashley S. Nunneker
Georgia Bar No.: 370553
William B. Gerwig IV
Georgia Bar No.: 774138
**STOKES WAGNER, ALC**
One Atlantic Center, Suite 2615
1201 West Peachtree Street
Atlanta, Georgia 30309
T: 404-766-0076
anunneker@stokeswagner.com
bgerwig@stokeswagner.com

*Counsel for Plaintiff*

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** has been prepared in 14-point Times New Roman Font, in compliance with the requirements of Local Rule 5.1(C).

Dated: Monday, December 12, 2022.

Respectfully submitted,

Ashley S. Nunneker
Georgia Bar No.: 370553
William B. Gerwig IV
Georgia Bar No.: 774138
**STOKES WAGNER, ALC**
One Atlantic Center, Suite 2615
1201 West Peachtree Street
Atlanta, Georgia 30309
T: 404-766-0076
anunneker@stokeswagner.com
bgerwig@stokeswagner.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, December 12, 2022, I electronically filed **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the clerk of court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

> John L. Monroe, Jr.
> Alyce B. Ogunsola
> Leslie B. Hartnett
> **FORD HARISSON LLP**
> 271 17th Street, NW
> Suite 1900
> Atlanta, Georgia 30363
> T: 404-888-3800
> jmonroe@fordharrison.com
> aogunsola@fordharrison.com
> lhartnett@fordharrison.com
>
> *Counsel for Defendants*

> Respectfully submitted,
>
> _____
> Ashley S. Nunneker
> Georgia Bar No.: 370553
>
> *Counsel for Plaintiff*