IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WERNER ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID WIRE, PHILLIP MITCHELL and AJC LOGISTICS, LLC, <br><br> Defendants. | Civil Action No.: 1:21-cv-02667-VMC |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiff's claim that it experienced déjà vu as a result of Defendants' Motion to Dismiss, is disingenuous and only serves to highlight the thrust of Defendants' motion: Defendants have continuously and repeatedly requested that Plaintiff identify, with reasonable particularity, the actual trade secret it alleges Defendants misappropriated in this case. Notwithstanding Defendants' repeated demands, both through discovery and motion practice, that Plaintiff identify the exact trade secret which forms the basis upon which it filed its lawsuit, *Plaintiff's Second Amended Complaint **still** fails to do so*.[1]

---

[1] Plaintiff also glosses over the clear invitation by the Court in its Order (Dkt. 61) to Defendants to re-file their Motion for Judgment on the Pleadings. The Court did not decide Defendants' Motion for Judgment on the Pleadings on its merits and instead

1

Defendants' request of Plaintiff is simple – specifically identify the trade secret it alleges Defendants misappropriated. For example, Plaintiff could have identified a document such as a pricing model or a specific spreadsheet that contained customer preference information. Indeed, in the Jacksonville litigation, Plaintiff claims that certain spreadsheets which allegedly contain Plaintiff's historical revenues, projected revenues, and performance analyses are trade secrets. Pl.'s Sec. Am. Compl. ¶¶ 26-28. Yet, in the instant case, Plaintiff has yet to identify any particular document or thing that it contends that the Defendants actually misappropriated.

A plaintiff *is required* to identify in its complaint the alleged trade secret it contends were misappropriated in cases such as the one brought by Plaintiff. Despite access to voluminous discovery in this case, the instant Plaintiff has failed to do so. Because of this failure, even after receiving leave from the Court to amend its Complaint for the second time, its trade secret claims must be dismissed. Additionally, Plaintiff's tort claims which are premised on the misuse of these unidentified trade secrets must be dismissed because they are preempted by the GTSA.

---

denied the motion without prejudice as moot. The Court then proceeded to invite Defendants to renew their motion within twenty-one days of the Order.

Plaintiff's remaining claims are similarly flawed. The confidentiality agreement upon which its breach of contract claims are based is void for lack of consideration and because they do not contain a temporal limitation as required by Nebraska and Georgia law. Finally, Plaintiff's claims for tortious interference also cannot survive based on new case law from the Georgia Court of Appeals which drastically reduced the application of claims for tortious interference.

## ARGUMENT/AUTHORITY

### A. In its Second Amended Complaint, Plaintiff still fails to properly identify the trade secret(s) it alleges was misappropriated.

Plaintiff continues to confuse its obligation to identify ***the actual specific*** trade secret(s) it alleges was misappropriated by Defendants with mere recitations of *types* of information that can legally be considered a trade secret under the GTSA and DTSA. Instead, Plaintiff reiterates its argument that the definitions of "trade secret" under the DTSA and GTSA are "purposefully broad" and that the Second Amended Complaint specifies "several types of information that are included within [the DTSA and GTSA definitions of 'trade secrets']." Pl.'s Opp. pp. 7-8.

This argument misses the mark entirely. Defendants' position is not that the vague categories of information included in Paragraph 13 of the Second Amended Complaint *cannot* meet the definition of a trade secret under the statutes. Instead,

Defendants' position is that Plaintiff must actually identify *the* very document, item, compilation or thing that meets the definition of trade secret *and* which Plaintiff alleges was misappropriated by Defendants. This is where the Second Amended Complaint fails.

Plaintiff continues this misguided argument in its attempt to distinguish *M5 Management Services, Inc. v. Yanac* from the present matter. 248 F. Supp. 3d 1282 (2019). Plaintiff argues that *M5* plaintiff failed to define trade secrets in its complaint whereas it provided an "extensive" definition of trade secret. Pl.'s Opp. p. 10. However, Plaintiff's "extensive" definition is the precise problem: Plaintiff has not identified what specific *thing* which might qualify as a trade secret forms the basis of its claims. Instead Plaintiff has provided the broadest possible definition of trade secrets to cover all bases *because it does not have any specific factual basis to assert that Defendants misappropriated any document, formulas or other item (tangible or not)* that might qualify as a *trade secret*. Instead, it is now obvious that Plaintiff filed this lawsuit with the hope of engaging in discovery and subsequently stumbling onto evidence of that Defendants took *something* which Plaintiff might then argue constitutes trade secret upon which it could then base its claims. This is not proper and Plaintiff should not be allowed to pursue this strategy.

The additional cases cited by Plaintiff contain selective quotations which obscure the true holdings of the cases. In fact, the cases upon which Plaintiff relies support Defendants' position. For example, in *Agilysys, Inc. v. Hall*, 258 F.Supp. 3d 1331 (N.D. Ga. 2017), the Court addressed whether the plaintiff had sufficiently alleged that the specifically alleged trade secrets met the legal definition of a trade secret under the GTSA, not whether the plaintiff had identified a trade secret with reasonable particularity. *Id.* That is not the issue currently before this Court. The plaintiff in *Agilysys*, did in fact, properly identify and allege specific trade secrets and the specific ways in which those trade secrets were allegedly misappropriated. The *Agilysys* plaintiff alleged that the defendant took specific documents such as "proposals for prospective customers and templates for proposals which were used to garner prior customer relationships." *Id.* at 1338. ***These are specific documents***, not broad categories of information such as those in the Amended Complaint. Additionally, the *Arilysis* plaintiff identified specific instances and acts which it alleged constituted misappropriation by the defendant. The plaintiff alleged that "on March 29, 30, and 31, 2016 Hall emailed Agilysis' trade secret, confidential and/or proprietary information from his Agilysys email account to his personal email account." *Id.* at 1338. On "March 31, 2016, at 4:54 p.m., Hall sent customer information regarding client software and hardware systems from his Agilysys email

account to his personal email account." *Id.* 1338. No such allegations are present here.

*U.S. Security Associates, Inc. v. Lumby*, 2019 WL 8277263 (N.D. Ga. Sept. 24, 2019), is easily distinguished from the present case because the *Lumby* plaintiff alleged that "approximately one week prior to his last day at USSA Lumby performed a massive download of client contact information from the Company's P3 system." [2] *Id.* at *2. Again, this is an identifiable act regarding specific information that occurred at a specific time. *See also Putters v. Rmax Operating, LLC*, 2014 WL 1466902 (N.D. Ga. Apr. 15, 2014)(plaintiff company performed a forensic analysis of defendant employee's company computer and determined that defendant unlawfully downloaded documents which contained proprietary and confidential information to an external hard drive).[3]

---

[2] The *Lumby* defendant was also subject to a non-competition and non-solicitation agreement, unlike Wire and Mitchell here.

[3] Plaintiff's attempts to distinguish *Putters* also fail. Inexplicably, Plaintiff focused on issues in *Putters* related to whether the *Putters* defendant acquired the alleged trade secrets by improper means, a separate requirement in establishing a claim for trade secret misappropriation. Pl.'s Opp. p. 11. This issue is not the subject of the present motion and Plaintiff's points on this topic are irrelevant to Defendants' reliance on this case.

### B. Plaintiff will be required to specifically identify the subject trade secrets prior to receiving discovery on these claims if the claims are not dismissed pursuant to this Motion.

Plaintiff erroneously argues that its claims should not be dismissed at this juncture because dismissal would deprive Werner of the opportunity to prove its claims (i.e. find a trade secret upon which to base its claims) in the discovery period. Pl.'s Opp. to Mot. to Dismiss, p. 4 fn 2.[4] However, even if Plaintiff's trade secret claims survive this Motion to Dismiss, which they should not, discovery on trade secret claims is not automatic – in order to obtain discovery on trade secret issues ***Plaintiff must specifically identify the trade secret at issue***. *See DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676 (N.D. Ga. 2007)(finding it appropriate to require pre-discovery identification of trade secrets with "reasonable particularity"); *see also Alcoa, Inc. v. Universal Alloy Corp.*, 2015 WL 13753187 at *2; *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013) (agreeing with *DeRubeis* and recognizing that "[t]he growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the

---

[4] In making this assertion, Plaintiff impliedly acknowledges and admits that it cannot identify a trade secret upon which its case is based. In other words, it has no factual basis for its present trade secret claims against Defendants.

7

alleged trade secrets at issue."); *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285, 2012 WL 2342929, at *4–6 (D. Nev. June 19, 2012) (citing *DeRubeis* and requiring the plaintiff to describe the allegedly misappropriated trade secrets with reasonable particularity before requiring the defendant to further respond to discovery requests).

Thus, avoiding dismissal at this juncture will not further Plaintiff's trade secret claims unless Plaintiff can identify with exactness the trade secrets it claims Defendants misappropriated. Given that Plaintiff has utterly failed to meet this burden more than eighteen months after it commenced this litigation, it is beyond unlikely that Plaintiff will now find the ability to make such an identification.

Thus, allowing Plaintiff extra time to pursue these claims would be futile and Defendants' Motion to Dismiss Plaintiff's trade secret claims should be granted.

### C. Plaintiff's claims for breach of contract should be dismissed.

For brevity's sake, Defendants will not reiterate its position as to Plaintiff's failure to properly identify the confidential information (and trade secrets) that Plaintiff alleges was misappropriated by Defendants in this case. Instead, Plaintiff relies on the arguments made in its Motion to Dismiss (Dkt. 66).

### 1. The Proprietary Matters Agreement is not supported by sufficient consideration.

With regard to whether the PMAs were supported by sufficient consideration, Plaintiff has yet again misread the case law upon which it relies. *Securities Acceptance Corp. v. Brown* does not hold that continued employment is sufficient consideration for the enforcement of a restrictive covenant in Nebraska. To the contrary, the court in *Securities Acceptance Corp.* instead found that the restrictive covenant conferred benefits on the employee in addition to continued employment, and thus, was supported by sufficient consideration. The Court found that the agreement included a fifteen-day notice of termination of employment which constituted "additional benefits accrued to Brown by the terms of the written agreement which did not contractually exist prior thereto." *Id.* at 462.

Similarly, *Signature Style, Inc. v. Roseland*, No. 4:19-CV-3089, 2020 WL 58456 (D. Neb. Jan. 6, 2020), does not "hold" that continued at-will employment is sufficient consideration to support a confidentiality agreement. The controlling holding in *Roseland*, was that an invalid non-compete provision was severable from the confidentiality obligation. In discussing the confidentiality provision, the Court merely observed in passing that the defendant conceded that he signed the confidentiality agreement in consideration for his continued employment with

Signature Style. *Id.* at *5. The opinion does not suggest that the Defendant in that case even raised the issue of whether continued employment is sufficient. Thus, the court did not make any ruling as to whether continued employment is proper consideration under Nebraska law.[5]

Instead, Nebraska case law is clear that a benefit to one party or a detriment to another must be present to constitute sufficient consideration to support a restrictive covenant. Plaintiff has not alleged that additional consideration was given for Wire and Mitchell's execution of the PMAs.

### 2. The lack of temporal limitation to the Proprietary Matters Agreements are fatal to its enforceability.

Finally, Plaintiff again misrepresents the holdings of the case law upon which it relies. Neither of the courts in the cases relied upon by Plaintiff, *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11CV438, 2012 WL 12985133 (D. Neb. May 25, 2012) and *Signature Style v. Roseland*, No. 4:19-CV-3089, 2020 WL 58456 (D. Neb. Jan. 6, 2020), address in any way the question of a temporal limitation.[6] Neither the *Election Systems* nor the *Signature Style* defendants sought

---

[5] Plaintiff inexplicably cites to Georgia case law for the proposition that continued employment is sufficient consideration for the PMA. However, the enforceability of the PMAs is governed by Nebraska law, not the law of Georgia.

[6] Moreover, the language of the *Signature Style* confidentiality agreement was not included in the Court's opinion so Defendants are unsure how Plaintiff can reliably

dismissal of claims on the basis that the subject agreements failed to include a temporal limitation. In fact, the *Election Systems* defendant did not seek to dismiss claims based on any argument that the subject agreement was not enforceable. These cases was analyzed and decided on completely different grounds.

### D. Preemption

Plaintiff admits that tort claims based on an alleged misappropriation of trade secrets are preempted by the DTSA and GTSA and should be dismissed. Pl.'s Opp. To Mot. to Dismiss p. 18. Thus, to the extent Plaintiff bases any portion of its tort claims, breach of duty of loyalty (for solicitation of customers), tortious interference with business relationships, and tortious interference with contract, these claims should be dismissed. Plaintiff's specific allegations which are, in fact, based upon claims of the misuse of alleged and unidentified trade secrets are set forth in more detail in Defendants' Brief in Support of Motion to Dismiss.

### E. Tortious Interference

Here again, Plaintiff misreads or misunderstands the case law on which its very claims depend. Plaintiff erroneously claims that the *Parnell* court did not hold that the *Parnell* new employer defendant was a stranger to the former employer's

---

represent that the agreement did not contain a temporal limitation, that the Court addressed that issue in any way, and that the opinion overall stands for the proposition that no temporal limitation is necessary in Nebraska.

relationships with its customers. Plaintiff asserts that the Court instead found that the new employer was not a stranger to the relationship between the defendant former employee and his former employer.

Actually both are true. The *Parnell* court made two findings: 1) that the new employer (RE/MAX) was not a stranger to the plaintiff's (P&H) relationship with the defendant former employee; and 2) the new employer (RE/MAX) was not a stranger to the plaintiff's (P&H) relationship with its customers because the new employer had a financial interest in convincing the plaintiff's customers to change their business to the new employer. *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205, 874 S.E.2d 394 (2022).

Plaintiff also inaccurately asks this Court to not to "extend the *Parnell* decision to apply to a competitor's interest in another company's business." To be clear, Defendants are not asking this Court to make such a leap on its own – the Georgia Court of Appeals made that extension in *Parnell*, holding:

> [T]he complaint alleged Parnell communicated with and solicited S&H's clients *on behalf of* the RE/MAX parties. In other words, the RE/MAX parties had a legitimate financial interest in Parnell potentially violating the agreement by inducing S&H's clients or potential clients to move their business from S&H to RE/MAX. Thus, S&H's complaint failed to allege any facts, much less sufficient facts,

12

to establish that the RE/MAX parties were strangers to the agreement or business relationship underlying it.[7]

This is precisely the scenario presented here. Plaintiff alleges that Defendants tortiously interfered with its relationships with its customers by using confidential information to recruit those customers to Defendant AJC. Here, just as in *Parnell*, all Defendants had a financial interest in recruiting customers from AJC to Werner (and were not otherwise prohibited from doing so by either non-compete or non-solicitation agreements). As a result, the defendants cannot be strangers to Plaintiff's relationships with its customers and cannot be held liable for tortious interference.

The *Parnell* case changes Georgia law on the stranger doctrine and further restricts application of tortious interference claims in this state. Prior to this 2022 case, Georgia courts did not exclude new employers from tortious interference claims under similar facts. However, the *Parnell* court made a clear holding that plaintiffs can no longer pursue such claims against individuals and companies such as AJC, Wire, and Mitchell, for pursuing clients and customers of a former employer/competitor, even if the pursuit of those customers allegedly violates a confidentiality agreement between employees and their former employer.

---

[7] Notably, the *Parnell* tortious interference claims were dismissed on a motion to dismiss. *Parnell* at 213-14.

As a result, Plaintiff's claims for tortious interference must be dismissed.

## CONCLUSION

Plaintiff has been afforded the opportunity to amend its complaint on two occasions and has nonetheless failed to correct the deficiencies outlined in this Defendants' Motion to Dismiss (because it cannot). Because of this failure, Defendants respectfully request that the Court grant Defendants' motion and dismiss Counts I, II, III, IV, V, VI, VII (insofar as it is premised upon Defendant Wire's misappropriation of Trade Secrets), IX, X, and XII with prejudice.

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that the foregoing has been prepared in Times New Roman font, 14-point type, which is one of the font and point selections approved by the Court in Local Rule 5.1(B).

Respectfully submitted this 9th day of January, 2023.

FORD & HARRISON LLP
271 17th Street, NW
Suite 1900
Atlanta, GA  30363
Telephone: 404-888-3800
Facsimile:  404-888-3863

*/s/ John L. Monroe, Jr.*
John L. Monroe, Jr.
Georgia Bar No. 516190
jmonroe@fordharrison.com
Leslie B. Hartnett
Georgia Bar No. 236877
lhartnett@fordharrison.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WERNER ENTERPRISES, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DAVID WIRE, PHILLIP MITCHELL, and AJC LOGISTICS, LLC,<br><br>　　　　Defendants. | CIVIL ACTION NO.<br>1:21-cv-02667-VMC |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9th, 2023, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** was electronically filed with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorneys of record:

Ashley S. Nunneker, Esq.
William B. Gerwig
Stokes Wagner
One Atlantic Center, Suite 2615
1201 West Peachtree Street
Atlanta, Georgia  30309

FORD & HARRISON LLP
271 17th Street, NW
Suite 1900
Atlanta, GA  30363
Telephone: 404-888-3800
Facsimile:  404-888-3863

*/s/ John L. Monroe, Jr.*
John L. Monroe, Jr.
Georgia Bar No. 516190
jmonroe@fordharrison.com

*Attorney for Defendants*

WSACTIVELLP:13700987.1

15