IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| WERNER ENTERPRISES, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>DAVID WIRE, PHILLIP MITCHELL and AJC LOGISTICS, LLC,<br><br>     Defendants. | Civil Action No.: 1:21-cv-02667-VMC |

**BRIEF MEMORANDUM IN RESPONSE TO ORDER**

In its May 22, 2023, Order, (Dkt. 72), the Court discusses an exception to the doctrine of *lex loci contractus* that directs Georgia courts to apply Georgia common law to foreign contracts where the foreign jurisdiction has no statute governing the contract. *See* Order, (Dkt. 72 ¶¶ 1-2), *citing Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.,* 713 F.2d 1500, 1503 (11th Cir. 1983); *Coon v. Medical Center, Inc.,* 797 S.E.2d 828, 834 (Ga. 2017); *Calhoun v. Cullum's Lumber Mill, Inc.*, 545 S.E.2d 41, 45 (Ga. Ct. App. 2001). The Order then raises the following questions:

   (1) Does Nebraska have a statute governing restrictive covenants in employment contracts?

   (2) If Nebraska does not have a statute on the subject, does Georgia common law apply?

   (3) If the confidentiality provision is unenforceable under either law, is the entire agreement unenforceable or just that provision?

The Court is correct that Nebraska has not enacted legislation governing restrictive covenants in employment contracts. Despite this, Georgia common law does not apply because the contracts at issue contain a valid Nebraska choice of law and Georgia courts do not apply *lex loci contractus*,

1

or its exception, where there is a valid choice of law provision. As a result, Nebraska common law applies to the contracts in this case. However, the contracts at issue in this case are valid and enforceable under both Nebraska and Georgia law.

## I.  Relevant Facts

Defendant David Wire and Defendant Phillip Mitchell, who were employees of Plaintiff Werner Enterprises, Inc. ("Werner") from 2014 until July 2020, signed Proprietary Matters Agreements (the "Agreements") in March of 2018, wherein they promised to maintain the confidentiality of Werner's confidential information and trade secrets. (Exhibit A-B to Sec. Am. Compl.). The Agreements were signed in consideration of the Defendants' continued employment with Werner and provided that Defendants' confidentiality obligations would last through the term of their employment with Werner and "for a period after termination of such employment, until the Confidential Information becomes publicly known . . ." (Exhibit A-B to Sec. Am. Compl. ¶ 1.) The Agreements also contain a Nebraska choice of law provision. *See* (Exhibit A-B to Sec. Am. Compl. ¶ 5) ("This Agreement shall be construed and enforced in accordance with the laws of the State of Nebraska.") In furtherance of a months-long scheme to wrongfully take customers and employees from Werner to its competitor, Defendant AJC Logistics, LLC. Defendants violated their obligations under the Agreements. *See* Sec. Am. Compl. (Dkt. 62). Defendants named their scheme "Project Orbit." *Id.*

## II.  ANALYSIS

The doctrine of *lex loci contractus* and its exception, the presumption of identity rule, do not apply to contracts with a valid choice of law clause. The contracts at issue contain a valid choice of law clause. Therefore, absent a showing that Nebraska law concerning nondisclosure

agreements violates Georgia public policy, Nebraska law applies. Were *lex loci contractus* and the presumption of identity rule to apply in this case, Georgia law would control. Regardless, the Agreements are enforceable under both Georgia and Nebraska law.

    **A.**    ***Lex Loci Contractus* does not apply to contracts containing a choice of law provision, and Nebraska law governs this contract.**

Where a contract contains a choice of law provision, Georgia courts do not apply the doctrine of *lex loci contractus*. *See Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998) ("Although Georgia courts adhere to the rule of *lex loci contractus*, parties by contract may stipulate that the laws of another jurisdiction will govern the transaction, unless the law is contrary to Georgia public policy or the chosen jurisdiction has no substantial relationship to the parties or the transaction.") (Internal quotations omitted.); *see also U.S. Security Associates, Inc. v. Lumby*, Case No. 1:18-cv-5331-TWT, 2019 WL 8277263, * 7 (N.D. Ga. Sept. 25, 2019) ("Georgia courts generally adhere to the rule of *lex loci contractus* to evaluate the enforceability of a contract **in the absence of a choice-of-law provision**.") (Emphasis added). Additionally, when interpreting a contract under the laws of a foreign state pursuant to a choice of law clause, this Court does not apply the exception to *lex loci contractus* known as the "presumption of identity rule," which limits Courts interpreting choice-of-law conflicts to applying only foreign *statutes* governing contracts, and not foreign common law. *See e.g., Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 1:07-CV-0286-BBM, 2008 WL 11333547, at *3 (N.D. Ga. Nov. 19, 2008)(construing claims for breach of a contract with a Pennsylvania choice of law provision under Pennsylvania common law.); *see also Travelers Prop. Cas. Co. of Am. v. TT Club Mut. Ins. Ltd.,* No. CV419-231, 2022 WL 988001, at *6 (S.D. Ga. Mar. 31, 2022), *appeal dismissed,* No. 22-11478-CC, 2022 WL 2976861 (11th Cir. July 8, 2022) ("Georgia courts also adhere to a unique

caveat to their choice of law rules, the presumption of identity rule. Under this rule, application of a foreign state's laws is limited to a foreign state's statutes or cases interpreting statutes.")[1] Rather, in Georgia, "the law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of th[e] state." *Moon v. CSA-Credit Sols. of Am., Inc.*, 696 S.E.2d 486, 488 (2010). "Covenants against disclosure, like covenants against competition, affect the interests of th[e] state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of th[e] state." *Hostetler v. Answerthink, Inc.*, 599 S.E.2d 271, 275 (2004) (citations omitted.) The public policy of Georgia is that contracts in restraint of trade are prohibited. Ga. Const. of 1983, Art. III, Sec. VI, Par. V(c) (OCGA § 13–8–2(a)(2)). However, a restrictive covenant that is part of a contract of employment is a partial restraint of trade that will be enforced if: "(1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public." *Hostetler*, 599 S.E.2d at 274 (2004).

Georgia public policy on the subject Agreements can be gleaned from Georgia's own restrictive covenant laws as they are applied to nondisclosure agreements. Restrictive covenants in Georgia are governed by common law as modified by the requirements of the Restrictive Covenants Act of 2011, Ga. Code Ann., § 13-8-50, *et seq*. The Restrictive Covenants Act specifically does not "limit the period of time for which a party may agree to maintain information

---

[1] The Court's Order cites to *Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983); *Coon v. Medical Center, Inc.*, 797 S.E.2d 828, 834 (Ga. 2017); and *Calhoun v. Cullum's Lumber Mill, Inc.*, 545 S.E.2d 41, 45 (Ga. Ct. App. 2001), for the proposition that, absent a controlling foreign statute, Georgia courts apply Georgia common law to interpret foreign contracts. (Dkt. 72 ¶¶ 1-2). The contracts at issue in each of those cases lacked a choice of law clause.

as confidential or as a trade secret, or [] limit the geographic area within which such information must be kept confidential or as a trade secret, for so long as the information or material remains confidential or a trade secret, as applicable." Ga. Code Ann. § 13-8-53(e). Confidential information is defined in the Act as data and information:

> (A) Relating to the business of the employer, regardless of whether the data or information constitutes a trade secret as that term is defined in Code Section 10-1-761;
> (B) Disclosed to the employee or of which the employee became aware of as a consequence of the employee's relationship with the employer;
> (C) Having value to the employer;
> (D) Not generally known to competitors of the employer; and
> (E) Which includes trade secrets, methods of operation, names of customers, price lists, financial information and projections, route books, personnel data, and similar information . . .

Ga. Code Ann. § 13-8-5.

Nebraska common law regarding the requirements of a nondisclosure agreement in the employment context is less developed. Nevertheless, Nebraska law aligns with Georgia's public policy related to nondisclosures. *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Dkt. 66); *citing Signature Style, Inc. v. Roseland*, No. 4:19-CV-3089, 2020 WL 58456, at *6 (D. Neb. Jan. 6, 2020); *Sec. Acceptance Corp. v. Brown*, 106 N.W.2d 456, 463 (1960), *decision clarified on denial of reh'g*, 107 N.W.2d 540 (1961) (enforcing restrictive covenant signed after employment commenced); *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11CV438, 2012 WL 12985133 (D. Neb. May 25, 2012) (enforcing analogous nondisclosure agreement). The Agreements require Werner employees to maintain the confidentiality of a narrowly defined set of information that falls within the Restrictive Covenant Act's definition of confidential information. *See Ga. Code Ann. § 13-8-5;* (Exhibit A-B to Sec. Am. Compl.) And the Agreements' durational provision echoes the requirement of Georgia law that confidentiality must

be maintained until the information in question ceases to be confidential. *See* Ga. Code Ann. § 13-8-53(e); (Exhibit A-B to Sec. Am. Compl. ¶ 1.)

### B. *Under lex loci contractus, Georgia law would apply.*

Though Nebraska law governs the Agreements for the reasons discussed above, were the Court to apply *lex loci contractus*, Georgia law would govern and the Agreements would still be valid and enforceable. *Lex loci contractus* mandates that "the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made." *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). Where a contract is executed in Georgia, a signatory was a Georgia resident, the signatory's employer was authorized to do business in Georgia through its Atlanta office, and the signatory's work was primarily performed in Georgia, this court has held that a contract was made in Georgia and construed the contract under Georgia law. *See Hostetler v. Answerthink, Inc.*, 599 S.E.2d 271, 274–75 (2004).

Here, the facts under a *lex loci contractus* analysis dictate that the Agreements would be governed by Georgia law. Defendants Wire and Mitchell signed the Agreements in Georgia, were both Georgia residents, did business in Georgia at Werner's Atlanta office, and primarily worked in Georgia. Therefore, a *lex loci contractus* analysis would lead to the Agreements being construed under Georgia law. Though the Court discussed the presumption of identity rule in its Order, this doctrine need not be reached under *lex loci contractus* in this case, as the facts indicate that Georgia law would govern under that analysis without any further need to examine Nebraska law. Regardless, Nebraska has no statute addressing restrictive covenants in employment agreements, so in the event that Nebraska law would need be examined under the presumption of identity rule,

Georgia contract law would control. *See Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) ("Notwithstanding certain confusion concerning the current choice of law rule followed in the Georgia courts, it is clear that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes.") (Internal citations omitted.)

### C. *Severability and Court Modification*

To the extent a portion of the Agreements were found unenforceable in Georgia, the Restrictive Covenants Act authorizes courts to modify nondisclosure agreements to make them enforceable. Ga. Code Ann. § 13-8-53(d). ("[A] court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties.") Nebraska, however, has adopted the minority rule that a restrictive covenant "is not subject to modification" and that a court must "either enforce it as written or not enforce it at all." *CAE Vanguard, Inc. v. Newman*, 518 N.W.2d 652, 656 (1994) ("This court has stated repeatedly that courts may not rewrite a contract for parties.) (Addressing a non-compete). In this case, such revisions would be unnecessary, as the Agreements are enforceable in their entirety under Nebraska law. *See* Pl.'s Br. in Opp'n to Def.'s' Mot. to Dismiss (Dkt. 66); *citing Signature Style, Inc.*, 2020 WL 58456, at *6; *Sec. Acceptance Corp.*, 106 N.W.2d at 463, *decision clarified on denial of reh'g*, 107 N.W.2d 540 (enforcing restrictive covenant signed after employment commenced); *Election Sys. & Software, LLC*, 2012 WL 12985133 (enforcing analogous nondisclosure agreement).

### III. CONCLUSION

The doctrine of *lex loci contractus* is not applicable to the Agreements, nor is the presumption of identity rule, due the Agreements' inclusion of a valid choice of law clause.

7

Therefore, Nebraska law controls the interpretation of the Agreements, which are valid under Nebraska law as discussed in Pl.'s Brief in Opposition to Defs.' Mot. to Dismiss (Dkt. 66). Should the Court nevertheless apply *lex loci contractus*, Georgia law will control the Agreements because of the direct application of the *lex loci contractus* test and because application of the presumption of identity rule would result in the application of Georgia law in the absence of a Nebraska statute governing nondisclosure agreements. The Agreements are enforceable in full under both Nebraska and Georgia law. Additionally, should Georgia law apply, and any provisions of the Agreements are found unenforceable, the Court may alter those provisions to make them enforceable.

Dated: Monday, June 5, 2023.

                Respectfully submitted,

                /s/ John R. Hunt
                _____
                John R. Hunt, Esq.
                Georgia Bar No.: 378530
                W. Baker Gerwig IV
                Georgia Bar No.: 774138
                **STOKES WAGNER, ALC**
                One Atlantic Center, Suite 2615
                1201 West Peachtree Street
                Atlanta, Georgia 30309
                T: 404-766-0076
                jhunt@stokeswagner.com
                bgerwig@stokeswagner.com

                *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on Monday, June 5, 2023, I electronically filed **BRIEF MEMORANDUM IN RESPONSE TO ORDER** with the clerk of court using the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

>John L. Monroe, Jr.
>Alyce B. Ogunsola
>Leslie B. Hartnett
>**FORD HARISSON LLP**
>271 17th Street, NW
>Suite 1900
>Atlanta, Georgia 30363
>T: 404-888-3800
>jmonroe@fordharrison.com
>aogunsola@fordharrison.com
>lhartnett@fordharrison.com
>
>*Counsel for Defendants*

>Respectfully submitted,
>
> /s/ John R. Hunt
>_____
>John R. Hunt, Esq.
>Georgia Bar No.: 378530
>
>*Counsel for Plaintiff*